41 N.J. Super. 454 (1956)
125 A.2d 420
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEE PINCUS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1956.
Decided September 21, 1956.
*456 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Ralph W. Campbell argued the cause for defendant-appellant (Mr. Edwin J. Fox, attorney).
Mr. Solomon Lautman argued the cause for plaintiff-respondent (Mr. Vincent P. Keuper, Monmouth County Prosecutor, and Mr. John W. Applegate, Assistant Prosecutor, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a judgment of conviction of the defendant on an indictment for violation of N.J.S. 2A:119-3. As applied to the present situation, the statute penalizes the obtaining of possession by false statements, representations or promises of any instrument for the payment of money, being the property of any other person. The indictment charges two separate and distinct offenses in separate counts. Each alleges that the defendants Pincus and the corporation Silverlee Farms, Inc., of which Pincus was vice-president and general manager, obtained a trade acceptance from the F.L.F. Farmers Union Cooperative Association ("F.L.F." hereinafter) on the basis of a promise to use the proceeds of the instrument to obtain the release of a bill of lading held by a bank against sight draft for certain quantities of soy bean oil meal which the defendant Silverlee Farms had sold as a jobber to F.L.F.
The circumstances which a jury could find from the evidence adduced on behalf of the State were these: In the first transaction, F.L.F., purchaser of the produce, was short of funds and asked Silverlee Farms to accept its 60-day trade acceptance for $2,389.52 in payment of the *457 merchandise. Pincus, on behalf of Silverlee Farms, agreed to do this. Consequently an acceptance was drawn on F.L.F. by Silverlee Farms, made payable to Silverlee Farms, was accepted by F.L.F., and endorsed on behalf of F.L.F. and by Pincus, individually, and on behalf of Silverlee Farms. The understanding was that Pincus would have the acceptance discounted with Mint Factors, a discount house in New York, and would use the proceeds to obtain release from the First National Bank of Farmingdale of a bill of lading held by that bank on sight draft for the goods sold, thereby accomplishing delivery of the merchandise to F.L.F. The evidence offered by the State at the trial was that Pincus cashed the trade acceptance and deposited the proceeds in bank to the credit of Silverlee Farms but that he failed to use the money, as agreed, to release the bill of lading. The result was that F.L.F. had to pay out its own funds to obtain the bill of lading for the merchandise, and that later, when the trade acceptance came due, had to meet it, too. Thus F.L.F. paid for the merchandise twice. When dunned by F.L.F. shortly after the default in releasing the bill of lading, Pincus gave it a check, but it was twice returned for insufficient funds. Shortly thereafter, according to the State's witness, the same kind of transaction was effectuated by Pincus with F.L.F. again, this one involving an acceptance for $3,249.20.
A motion for dismissal as to Pincus, individually, at the end of the State's case, based on the contention that Pincus was acting solely as representative of the Silverlee corporation, was denied.
Testifying in his own behalf, Pincus said that it was understood between him and F.L.F. that he could use the proceeds of the trade acceptances to obtain releases of other cars of soy bean oil meal previously shipped, and sold by Silverlee Farms to F.L.F., for which F.L.F. was awaiting delivery; in other words, that there was a running account between Silverlee Farms and F.L.F. He contended that there was no criminal misrepresentation but only civil liability on a running account. It also appeared that, aside from Pincus *458 Silverlee Farms had only one employee, a bookkeeper, and that all of its net income went to pay Pincus' salary and expenses.
On this appeal we are importuned to reverse on the ground that at the end of the State's case there was no evidence that Pincus, individually, had committed any violation of this statute. This conclusion is sought to be founded on the concession by the prosecuting witness that F.L.F.'s commercial transactions were with Silverlee Farms, not Pincus, other than as its officer and agent, and that the proceeds of the acceptances went into the Silverlee Farms bank account. It is true that defendant was entitled to have the State's case measured for sufficiency on the motion for acquittal by the content of the proofs before the defense went in. State v. Fox, 12 N.J. Super. 132 (App. Div. 1952). But the criterion is whether there was any legal evidence before the jury from which an inference of guilt could legitimately be drawn. State v. Rogers, 19 N.J. 218, 232 (1955).
That Pincus was a full and knowing participant in the transaction, and, indeed, the corporation's only executing mind in reference thereto, is obvious. It is well settled that a corporate officer or agent may be criminally liable for his own acts, although done in his official capacity, if he participates in the unlawful act, either directly, or as aider, abettor or accessory. 3 Fletcher Cyclopedia of Corporations (1947), § 1348, p. 1126; 19 C.J.S., Corporations, § 931, pp. 363, 364; Engeman v. State, 54 N.J.L. 257, 259 (Sup. Ct. 1892); State v. Lux, 235 Minn. 181, 50 N.W.2d 290 (Sup. Ct. 1951). Cf. State v. Paine, 122 N.J.L. 126, 128 (Sup. Ct. 1939); State v. Continental Purchasing Co., 119 N.J.L. 257 (Sup. Ct. 1938), affirmed 121 N.J.L. 76 (E. & A. 1938). As to the situation of a corporate employee not an officer, see State v. Western Union Telegraph Co., 12 N.J. 468, 495 (1953). It therefore follows that if the State's proofs justified an inference of corporate guilt, which was admitted on the motion at the trial, the individual defendant was equally implicated.
*459 It may be noted, in passing, that for purposes of the statutory offense here involved, the acceptances are to be considered the "property" of F.L.F. See State v. Fary, 16 N.J. 317 (1954).
At the oral argument, but not in his brief or at the trial, defendant asserted the additional point that he was entitled to an acquittal on his motion because the circumstances established by the State did not exclude the hypothesis of innocence, relying upon State v. Fox, supra. We consider the argument because of the seriousness of defendant's plight. But he misconstrues the case. The court there held that if the State's evidence "reasonably and fairly" makes tenable a hypothesis of innocence, there should be an acquittal, notwithstanding that an inference of guilt is also possible. (12 N.J. Super., at page 137). In the instant case, the circumstances established by the testimony of the State's witness, if believed, do not make a hypothesis of innocence fairly or reasonably tenable. That the hypothesis of innocence got stronger with the adduction of the defense proofs is, of course, immaterial. The rule of the Fox case concerns only the strength of the prosecution evidence. In the sharp dispute of facts at the end of the entire case, the resolution of the issue of guilt or innocence was for the jury.
Affirmed.