STATE of Maine

v.

Daniel PLACZEK.

Supreme Judicial Court of Maine.

Dec. 9, 1977.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Stephen J. Burlock, Asst. Dist. Attys., Bangor, for plaintiff.

Foster Law Offices by Stephen D. Foster (orally), Philip R. Foster, Ellsworth, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

By agreement of the parties and order of the Superior Court, this case comes to us on report pursuant to Rule 37A(a), M.R. Crim.P. The novel question of law presented is whether the executive director and treasurer of a corporation who, acting as such, executes and delivers on behalf of his corporation a deed that is a fraudulent conveyance by the corporation is himself also a "party" to that conveyance, upon whom 17 M.R.S.A. § 1613 (1964)[1] was intended to impose criminal sanctions.

The parties filed an agreed statement of facts which in significant part states the following: In November 1974 Leroy and Dorothy Caler conveyed certain real estate located in Bangor to the Greater Penobscot Consumers Cooperative (Cooperative), a corporation. Upon the conveyance, the Cooperative paid the Calers $3,000 of the $15,-000 purchase price, the balance to be paid in 96 equal installments (presumably monthly). The deed was promptly recorded. In March 1976 the defendant, Daniel Placzek, acting in his capacity as executive director and treasurer of the Cooperative, executed a deed by which the Cooperative conveyed the Bangor premises to one Jessie Leach. That deed was also immediately recorded. Neither the Cooperative nor Mr. Placzek received any consideration for the conveyance to Leach.[2] When he executed the deed, Mr. Placzek knew that the Cooperative was in fact insolvent, that no consideration was received by him or the Cooperative for the conveyance, and that the Calers continued to be creditors of the Cooperative.

In May 1976 a Penobscot County grand jury indicted Mr. Placzek for a violation of 17 M.R.S.A. § 1613 (1964). The indictment charged:

"That on or about the 1st day of March 1976, in the County of Penobscot, State of Maine, DANIEL PLACZEK was knowingly a party to a conveyance of real estate made with the intent to defraud a creditor, to wit, the said DANIEL PLACZEK executed a warranty deed conveying certain real estate in the County of Penobscot from Greater Penobscot Consumers Cooperative, a corporation duly created by law, to Jesse [sic] S. Leach, with the intent thereby to defraud Leroy S. Caler and Dorothy M. Caler, creditors of Greater Penobscot Consumers Cooperative."

1. At the time of the conveyance that statute provided:

"Whoever is knowingly a party to any conveyance or assignment of real estate or interest in lands, goods or things in action, or rents and profits arising therefrom, or to any charge thereon, made with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or others; knowingly puts such fraudulent conveyance, as-signment or charge into use, as genuine and made in good faith, shall be punished by a fine of not more than $1,000 and by imprisonment for less than one year."
17 M.R.S.A. § 1613 (1964) was repealed by P.L. 1975, ch. 499, § 8 (eff. May 1, 1976).

2. The parties agree that this was the case, notwithstanding the form recitation in the deed to Leach that the conveyance was "for consideration paid."

## I

### *Propriety of the Report*

■ Rule 37A(a), M.R.Crim.P.,[3] and the civil rule upon which it is modeled, Rule 72(a), M.R.Civ.P.,[4] establish the procedure by which the Superior Court may, with agreement of the parties, report to the Law Court questions of law in criminal and civil cases pursuant to the Law Court's jurisdictional grant.[5] When the Superior Court reports a case to this court, we examine the record to be sure that the parties and the court below have fully complied with the requirements of the relevant report rule, *State v. Bailey,* Me., 286 A.2d 603 (1972); *State v. Beckwith,* 135 Me. 510, 195 A. 798 (1938), recognizing that the rules "[do] not purport to govern the discretion of the Law Court in receiving or considering the report. The power to discharge a report inheres not only in our right and interest to control our own docket, but in our general powers of superintendence and supervision over inferior tribunals." *Laverdiere v. Marden,* Me., 333 A.2d 701, 702 (1975) [report of interlocutory ruling under Rule 72(c), M.R.Civ.P.].

Rule 37A(a), M.R.Crim.P., prescribes three prerequisites to the report of a criminal proceeding by agreement: (1) both the defendant and the State must agree; (2) a decision by the Law Court on the question of law must "in at least one alternative result in a final disposition of the action in favor of the defendant"; and (3) the court must certify that "it is of the opinion that any question of law is involved of sufficient importance or doubt to justify" the report. In the case at bar, the first prerequisite is satisfied by the parties' written agreement to report. Furthermore, if this court were to hold that an officer of Mr. Placzek's corporate rank and degree of involvement in a conveyance of real estate cannot be a "party" within the intent of 17 M.R.S.A. § 1613 (1964), this court would direct dismissal of the indictment, *i. e.,* make "final disposition of the action in favor of the defendant." *Cf. State v. MacNamara,* Me., 345 A.2d 509 (1972). We conclude, however, that the third prerequisite is not here satisfied.

■ Although in the case at bar the Superior Court certified that in its opinion a sufficiently important or doubtful question of law is involved in the proceeding to justify this report, the question of law must be sufficiently important or doubtful also in the eyes of *this* court.

"[T]he Law Court retains power to make its own independent determination whether in all the circumstances of a given case its decision 'on report' would be consistent with the Court's basic functions as an appellate tribunal." *State v. Foley,* Me., 366 A.2d 172, 173 (1976). Prior to the adoption of the Maine Rules of Civil Procedure and of Criminal Procedure, the Law Court in exercising its statutory

---

3. Rule 37A(a), M.R.Crim.P., has remained substantially unchanged since its promulgation effective December 1, 1965, as follows:

   "The court may, where the defendant and the State so agree, report any proceedings to the Law Court if it is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same, provided that the decision thereof would in at least one alternative result in a final disposition of the action in favor of the defendant."

4. Rule 72(a), M.R.Civ.P., has remained unchanged since its promulgation effective December 1, 1959, as follows:

   "The court may, where all parties appearing so agree, report any action to the Law Court if it is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same, provided that the

   decision thereof would in at least one alternative finally dispose of the action."

5. 4 M.R.S.A. § 57 (1964) (amended 1965) in pertinent part now reads as follows:

   "The following cases only come before the court as a court of law: . . . questions of law arising on reports of cases, including interlocutory orders or rulings of such importance as to require, in the opinion of the justice, review by the law court before any further proceedings in the action; . . . ."

   The report jurisdiction of the Law Court existed long before the 1959 adoption of the Maine Rules of Civil Procedure. *See, e. g.,* R.S.1857, ch. 77, § 17 ("The following cases only come before the court as a court of law: . . . questions of law arising on reports of cases . . . .").

jurisdiction [6] to hear "questions of law arising on reports of cases" had declared the self-imposed requirement of "sufficient importance or doubt." The court, in *Hand v. Nickerson,* 148 Me. 465, 469, 95 A.2d 813, 816 (1953), stated that:

> "[I]t is . . . *implied* [from the Law Court's jurisdictional grant] that the questions of law involved must be of *sufficient importance or doubt to justify reporting the same.* Otherwise, any case could be reported to the Law Court for decision, because the decision of every case involves a question of law and its application to the existing facts." (Emphasis in original) [7]

Report of questions of law prior to final disposition of the case by the trial court represents a major breach in the "final judgment" rule. That rule reflects weighty policy considerations as to proper judicial administration.[8] Multiple trips to the Law Court make for added delay and expense in a litigation process already too slow and too costly. Even though the agreement of both parties may in a civil case go far to eliminate any need for this court to concern itself with such delay and expense, the public in a criminal case has a direct and substantial interest in avoiding both. In the overwhelming majority of criminal cases, the public bears the expense of both the prosecution and the defense; and furthermore, the public is injured by any avoidable delay in convicting the guilty and acquitting the innocent. This court recognizes it has a special responsibility to protect those public interests even though the prosecution, the defense, and the trial court may all agree, each for its own reasons, to report a legal question to the Law Court. It is not without significance that one of the best statements in Maine of the policy reasons for the "final judgment" rule appears in *Hand v. Nickerson, supra,* in which the Law

Court was laying down self-imposed limits on the report of cases to it. Furthermore, excessive use of the report mechanism "would transform the Law Court into an advisory board for the direction of the business of the court at nisi prius, a function the Law Court cannot assume." *Fidelity & Casualty Co. v. Bodwell Granite Co.,* 102 Me. 148, 152, 66 A. 314, 316 (1906). If assumption of such a role appeared undesirable to our predecessors in 1906, the multiplied and multiplying caseload of the 1977 Law Court makes it entirely impossible.

Practical considerations of economical use of judicial resources also dictate chary use of reports. For any number of reasons a case not reported may never reach the Law Court. For example, both of the parties may be satisfied with the trial judge's own ruling on the disputed question of law, or for other reasons may elect not to appeal. Still further, if the case is permitted to proceed in its normal course through to judgment in the Superior Court, it may be disposed of *on its facts* favorably to the same party who, on the rule's alternative of final disposition in the Law Court, would have prevailed, and so the disputed question of law is mooted. Thus, it often is not an efficient use of total court resources to report the case to the Law Court merely on the chance that its decision may turn out to be one that finally disposes of the case.

For all these reasons, *Hand v. Nickerson, supra,* declared, and the civil and criminal report rules adopted verbatim, the requirement that to justify reporting a case by agreement to the Law Court prior to judgment, it must involve a question of law of "sufficient importance or doubt."

█ The policy reasons behind the "sufficient importance or doubt" requirement aid us in giving content to those words and in

---

6. See note 5 above.

7. By P.L. 1881, ch. 68, § 13, the Maine Legislature early established by express statutory language that the Law Court's jurisdiction to determine *causes in equity* on report was restricted to those causes which raised a question of law of "sufficient importance or doubt" to jus-

tify the report. In *Hand v. Nickerson, supra,* the Law Court first expressly declared that requirement to be applicable to *all* cases on report.

8. *See* 2 Field, McKusick and Wroth, *Maine Civil Practice* § 73.1 (2d ed. 1970).

applying them to concrete fact situations. Although the *Hand v. Nickerson* court said "importance *or* doubt," and the rules took over the disjunctive without change, the question must in fact be one of both "importance *and* doubt" to justify report. "Importance" alone must mean something more than the separate requirement that a Law Court decision on the question of law would result, in at least one alternative, in a final disposition of the action. The word "importance" leads us to consider the significance of a Law Court decision on the reported question of law, not only to the parties but also to other members of the public.[9] In a criminal action, for example, that significance may lie in obtaining a definitive interpretation of a penal statute in order to give prompt notice to persons who would otherwise risk violation or to guide the course of other prosecutions under the same statute.

■ The question must, however, also be sufficiently *doubtful* to justify report. *See Huot v. Gendron*, Me., 284 A.2d 899 (1971). If the question has been decided or could readily be answered by study of the existing law, the parties and the trial court bear responsibility to determine and apply the controlling principles; this court does not sit on report to decide questions involving only slight doubt, no matter now important the disputed question might otherwise be. *Cf. Laverdiere v. Marden, supra.*

■ Judged by the above criteria, the question of law now before this court on report fails to meet the test of "sufficient importance" *and* "doubt." The question presented is whether the corporate agent, Placzek, can be a "party" to the fraudulent conveyance from the Cooperative to Leach, within the meaning of that word in 17 M.R.S.A. § 1613 (1964). Last year that

statute was repealed, simultaneously with the new Maine Criminal Code's becoming effective. P.L. 1975, ch. 499, § 8 (eff. May 1, 1976). The code substituted a new provision which proscribes certain conduct committed by . *persons* and avoids use of the troublesome word "party." 17–A M.R.S.A. § 902. The repeal of section 1613 and its replacement by code section 902, which does not use the word "party," renders any decision by this court on the question of law raised on this report of little or no importance outside resolving this one case. This proceeding was not even reported until the statute sought to be construed had been out of existence for more than a year. It appears highly unlikely that a decision on the meaning of the word "party" in section 1613, repealed on May 1, 1976, will be relevant to any other prosecutions. Obviously, the decision will have no value in guiding future conduct. Therefore, even though sufficient doubt exists as required by the rule, the question of law presented lacks the substantial importance necessary to justify the Rule 37A shortcut to this court. In the regular course of the trial of this criminal case, the Superior Court should itself have decided the meaning of "party" in section 1613, remitting the parties to the appeal route, to the extent available, for any review desired after final judgment.

Having thus found that the report was improvident, we could dispose of this case, at least for the present, by discharging the report. We conclude, however, that such disposition would not best serve the interests of judicial economy. The merits of the reported question of law have been fully briefed and argued orally before this court, whose members have already expended extensive time in researching and deliberating on the case. If we discharge the report, our effort would in all probability have to be

9. The public interest giving importance to the question of law may come from considerations of efficient judicial administration, rather than from precedential value or other consequences going beyond the immediate private parties. The well-established practice of reporting complex, multi-party will construction cases for final decision by the Law Court "upon so much of the evidence adduced as is legally admissi-

ble" [*cf. Buck v. Kilgore*, Me., 298 A.2d 107, 108 (1972)] has developed from the likelihood of an appeal by whatever party was aggrieved by any decision by the Superior Court. For the Law Court to take the case directly on a properly prepared record results in the expenditure of the least judicial resources in its final disposition.

duplicated by a Superior Court justice; and then, if his decision was adverse to the defendant (as is ours in Part II of this opinion), an appeal to this court is a possibility that is turned into a near certainty by the fact that the defendant as an indigent is represented by assigned counsel at public expense. It is necessary that this criminal case at some time be disposed of by final judgment; and in order to minimize the judicial resources that are expended on it, we will proceed to answer the question of law posed by the report. *Cf. Huot v. Gendron, supra; Hand v. Nickerson, supra.* Our decision of this improvident report should not, however, be taken as any relaxation whatever of the strict requirements that must be met before a Superior Court justice submits an interlocutory question of law to this court for decision on report.

## II.

### Merits of the Report

▮ The word "party" in section 1613 is susceptible of several interpretations. The grantor and grantee of a fraudulent conveyance of real estate are clearly parties to that conveyance and subject to criminal prosecution under the statute. *See, e. g., Andrews v. Marshall,* 48 Me. 26 (1860). Is the executive director and treasurer of a corporation, who knowingly signs a deed in that corporate capacity effecting a fraudulent conveyance by the grantor (his corporation), also a "party" to that conveyance? We conclude that question must be answered affirmatively if such a corporate agent personally entertains the intent to "hinder, delay or defraud" creditors.

▮ The principle that a corporate agent may, under certain circumstances, be held criminally liable for his acts committed in the name of his corporation, is widely embraced. *See, e. g., Clifton v. State,* 1 Storey 339, 51 Del. 339, 145 A.2d 392 (1958) (corporate officer held criminally liable for issu-

ing the corporation's worthless check in his official capacity under statute penalizing "[w]hoever makes, draws, utters, or delivers" a worthless check); *State v. Pincus,* 41 N.J.Super. 454, 125 A.2d 420 (1956) (corporate officer held criminally liable for obtaining possession by false pretenses of an "instrument for the payment of money," which is the property of another person, under statute penalizing "[a]ny person who" obtains such property by false statements, representations or promises); *see generally* 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 1348–59 (rev. perm. ed. 1975).[10] The existence of the corporate entity does not shield from prosecution the corporate agent who knowingly and intentionally causes the corporation to commit a crime. The corporation obviously acts, and can act, only by and through its human agents, and it is their conduct which the criminal law must deter, and those actors who in fact are culpable. *Clifton v. State, supra.*

The language of section 1613 imposing criminal penalties upon "[w]hoever is knowingly a party to" a fraudulent conveyance of real estate is directly descended from Stat. 13 Eliz., ch. 5, §§ 3–4 (1571). That famous act declared "void, frustrate and of none effect" any conveyance of a debtor's property made with the intent to "delay, hinder or defraud" creditors "and others" of their rightful claims to the debtor's assets. Criminal penalties were imposed upon "all and every the parties to such feigned, covinous or fraudulent . . . alienation . . . and being privy and knowing of the same." The criminal provision of the statute of 13 Elizabeth has always been in effect in Maine, first as common law, later as statute. *See Butler v. Moore,* 73 Me. 151, 154–55 (1882); *Howe v. Ward,* 4 Me. 195, 199 (1826). The predecessor to section 1613, R.S. 1841, ch. 161, § 2, read substantially the same as the statute of 13 Eliza-

---

10. 17–A M.R.S.A. § 61(1), effective May 1, 1976, provides:

"An individual is criminally liable for any conduct he performs in the name of an organization or in its behalf to the same extent as if it were performed in his own name or behalf. Such an individual shall be sentenced as if the conduct had been performed in his own name or behalf."

beth and remained virtually unchanged until its repeal at the time of the enactment of the substantially different provision of the new criminal code on May 1, 1976. Section 1613's embodiment of the language of the statute of 13 Elizabeth indicates legislative intent that the Maine statute be construed in light of the breadth of the remedial purpose of the statute of 13 Elizabeth. The act was intended to deter and punish those persons who, as the "parties" to the conveyance, were responsible for the creditor's injuries which it was the overall remedial design of the statute to prevent. Nothing in that recognized remedial purpose supports the notion that an agent who commits the proscribed conduct, thereby bringing about the prohibited result, should be exempt from criminal liability for his knowing and intentional acts.

Section 1613 provided punishment of both "a fine of not more than $1,000" and also "imprisonment for less than one year." It would be an anomalous result if only the Cooperative could be held criminally responsible for Mr. Placzek's action and the State were thus put in the unhappy position of being a creditor of the insolvent Cooperative trying to collect a fine from it. Imposition of a fine upon an insolvent corporation is often as a practical matter no punishment to it at all. The statute, by mandating punishment by imprisonment (as well as by fine), fairly implies recognition both (1) that even a corporation's fraudulent conveyance inevitably involves an active natural person who does its dirty work and (2) that a fine against an insolvent corporation may not be any real or effective sanction.

For these reasons, we answer in the affirmative the question of law posed by the parties in their Agreed Statement of Facts:

> "The sole issue raised in this matter is whether or not Daniel Placzek may be considered a party to the fraudulent conveyance from Greater Penobscot Consumers Cooperative to Jessie S. Leach within the meaning of Title 17, M.R.S.A. § 1613."

The entry must be:

Remanded for further proceedings consistent with this opinion.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.