STATE of Maine, ex rel. James E. TIERNEY, Attorney General, et al.

v.

**FORD MOTOR COMPANY.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1981.

Decided Nov. 3, 1981.

Cheryl Harrington (orally), John Dana, Asst. Atty. Gen., Augusta, for plaintiffs.

Verrill & Dana, Howard H. Dana, Jr. (orally), Robert J. Keach, David Hillman, Roger A. Putnam, Portland, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ., and DUFRESNE, A. R. J.

ROBERTS, Justice.

This action arises from the sale of automobiles manufactured by the defendant, Ford Motor Company (Ford), to Maine residents and consumers. Following the Superior Court's denial of its motion to dismiss, Ford, as an "aggrieved party," moved the Superior Court pursuant to M.R.Civ.P. 72(c) to report the case to the Law Court.[1] The Superior Court granted Ford's motion to report the case over the Attorney General's opposition on the grounds that the issues presented were of sufficient doubt and importance to justify report to this Court. We reverse in part the ruling of the Superior Court.

## I. Factual Background

The Attorney General commenced two actions against Ford in 1979.[2] Both actions are predicated upon claims that between 1974 and 1977 Ford vehicles were sold to Maine buyers in defective condition; that Ford included misleading maintenance specifications with the vehicles; and that Ford later failed to repair the vehicles. The Attorney General alleges Ford vehicles were sold with latent defects including piston scuffing, piston slapping, excessive camshaft and rocker arm wear, cracked engine blocks and other "malfunctioning conditions." These alleged defects may lead to shortened engine life and the possibility of premature major engine repair.

The initial complaint brought by the Attorney General, CV 79–415 (415), contains five counts against Ford. Three of the five

---

1. M.R.Civ.P. 72(c) provides:

   **Report of Interlocutory Rulings.** If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

2. On motion by plaintiff the Superior Court consolidated the cases pursuant to M.R.Civ.P. 42(a).

counts, Counts One, Two and Four, allege violations of the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S.A. §§ 206–214.[3] Count Three alleges that Ford's improper lubricant specifications constituted a false material representation which injured buyers of its products. Count Five is a class action claim wherein the State, relying on the aforementioned grounds, seeks to bring a class action on behalf of the consumers injured by Ford's acts and omissions.

The second complaint before us, CV 79–737 (737) contains three counts against Ford. Counts One and Three allege Ford's breach of warranty, failure to honor the warranty and improper lubricant specifications constitute violations of Maine's UTPA. Count Two alleges the improper lubricant specifications constitute false material representations.

Ford, pursuant to M.R.Civ.P. 12(b), moved to dismiss 415 on fourteen grounds and moved to dismiss 737 on thirteen grounds. The Superior Court conducted an evidentiary hearing and heard oral argument regarding Ford's motion. At oral argument Ford relied primarily on its position that 5 M.R.S.A. § 208(2) bars the Attorney General from bringing an action sounding under the UTPA and deprives the Superior Court of jurisdiction over the action and that the Attorney General is not a proper party to prosecute the class action claim.

Section 208(2) of Title 5 contains what is commonly referred to as the "interstate commerce exemption" of the UTPA. This section of the UTPA provides:

Nothing in this chapter shall apply to:

. . . .

2. **Interstate commerce.** Trade or commerce of any person of whose gross revenue at least 20% is derived from transactions in interstate commerce, excepting however transactions and actions which occur primarily and substantially within the State, and as to which the Federal Trade Commission or its designated representative has failed to assert in writing within 14 days of notice to it and to said person by the Attorney General its objection to action proposed by him and set forth in said notice; the burden of proving exemption, under this subsection, from this chapter shall be upon the person claiming the exemption.

5 M.R.S.A. § 208(2).[4] The parties stipulated that the defendant derived at least 20% of its gross revenue from interstate commerce. Ford argued that section 208(2) should apply as "the transactions and actions" complained of did not occur "primarily and substantially within the State" so as to bring the action within the intrastate exception to the section 208(2) interstate commerce exemption, but rather, occurred, if they occurred at all, on a nationwide scale.[5]

The Attorney General, in opposition to the motion, argued that a 1973 amendment to the Maine Uniform Commercial Code (U.C.C.), 11 M.R.S.A. § 2–316(5)(a), "jumped over," or "superseded" the provisions of section 208(2).[6] In addition, the Attorney Gen-

---

**3.** 5 M.R.S.A. § 207 provides:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.

**4.** For the purposes of the ensuing discussion we refer to the provisions of 5 M.R.S.A. § 208(2) as the "interstate commerce exemption" of the Maine Unfair Trade Practices Act.

The clause of the interstate commerce exemption which provides that subsection (2) shall not apply to "transactions and actions which occur primarily and substantially within the State" we refer to as the "intrastate exception" to the "interstate commerce exemption."

**5.** Because 5 M.R.S.A. § 208(2) places the burden of proving the exemption upon Ford, we regard Ford's motion as one which presents an affirmative defense under M.R.Civ.P. 8(c), rather than a defense which would deprive the Superior Court of subject matter jurisdiction under M.R.Civ.P. 12(b)(1). When, as here, the defense has been timely raised, the issues have been presented without objection in an evidentiary hearing and thereafter ruled upon, we treat the issues raised as severed for determination by the Court in advance of trial.

**6.** 11 M.R.S.A. § 2–316(5)(a) provides:

A violation of sections 2–314, 2–315 or 2–316 arising from the retail sale of consumer goods and services, shall constitute a violation of Title 5, chapter 10, Unfair Trade Practices Act.

eral argued that the implied warranties which arise under the provisions of the Maine U.C.C., 11 M.R.S.A. §§ 2–314, 2–315, 2–316, are created solely by state statute and that if a "violation" of the implied warranties created by §§ 2–314, 2–315, and 2–316 constitutes a violation of the Maine UTPA by virtue of 11 M.R.S.A. § 2–316(5)(a) then that violation must be construed to occur primarily and substantially within the state which created the warranties.

The Superior Court denied Ford's motion holding that "section 208(2) does not apply to actions asserting private rights." The Court also noted that "[a]lthough the Attorney General and Ford have raised many other issues in support of their respective positions, it is the Court's view that resolution of the matters presented at oral argument encompasses these other issues." Following the denial of its motion to dismiss, Ford, over the State's opposition, moved the Court to report the case to the Law Court, pursuant to M.R.Civ.P. 72(c).

II. *The Propriety of a Report Pursuant to M.R.Civ.P. 72(c)*

▇▇▇▇ A report brought before this Court pursuant to Rule 72(c) presents the Law Court with the entire case, not only the issue underlying the decision complained of below.[7] Although presented with the entire case, we emphasize that our review must concurrently conform with our function as an appellate tribunal. *Matheson v. Bangor Publishing Co.*, Me., 414 A.2d 1203, 1205 (1980). As we have said many times in the past, "the Law Court retains power to make its own independent determination whether in all the circumstances of a given case its decision 'on report' would be consistent with the Court's basic function as an appellate tribunal." *Bangor Publishing Co.*, 414 A.2d at 1205, *quoting State v. Foley*, Me., 366 A.2d 172, 173 (1976); *see Gendron v. Pawtucket Mutual Ins. Co.*, Me., 409 A.2d 656, 660 n.10 (1979). Notwithstanding the provisions of Rule 72,

we have consistently reiterated our strong policy against piecemeal appellate review. *In re Spring Valley Development*, Me., 300 A.2d 736, 754 (1973). *See, e. g., Bar Harbor Banking & Trust Co. v. Alexander*, Me., 411 A.2d 74, 76 (1980); *Mechanic Falls Water Co. v. Public Utilities Commission*, Me., 381 A.2d 1080, 1088 (1977). *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice*, § 73.1 (2d ed. 1970). As we stated in *State v. Placzek*, Me., 380 A.2d 1010, 1013 (1977), it "is not an efficient use of total court resources to report the case to the Law Court merely on the chance that its decision may turn out to be the one that finally disposes of the case." The case presently before us approaches dangerously close to evils we warned against in *Placzek* and cases prior thereto. *See Laverdiere v. Marden*, Me., 333 A.2d 701, 702 (1975).

▇▇▇▇ We also recognize that sound appellate procedure requires appellate courts to refrain from ruling upon issues which the parties did not pursue below and which the parties have not raised before us. *McNicholas v. York Beach Village Corp.*, Me., 394 A.2d 264, 268 (1978). *See In re Estate of Thompson*, Me., 414 A.2d 881, 890 (1980); *National Advertising Company v. Inhabitants of the Town of York*, Me., 345 A.2d 512, 514 (1975).

▇▇▇▇ Although we have recognized in the past that reports pursuant to Rule 72(c) may serve the cause of justice when appropriate, *Laverdiere v. Marden*, 333 A.2d 701, 702 (1975), we also must require, before determination of issues underlying an appeal brought under Rule 72(c), "clear concreteness . . . precisely framed . . . from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests." *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961).

▇▇▇▇ In the case at bar, the defendant has raised fourteen separate grounds in support

---

7. M.R.Civ.P. 72(c) provides:

the court . . . may . . . report *the case* to the Law Court. . . .

(Emphasis added.)

of its motion to dismiss. At oral argument to the Superior Court Ford pressed only two of its defenses, *viz.*, that 5 M.R.S.A. § 208(2) exempted Ford from suit and that the Attorney General was not a proper party to prosecute a class action. The order of the Superior Court denying Ford's motion relates only to Ford's argument that section 208(2) should exempt it from suit under the UTPA. Ford's section 208 argument, however, can only be reasonably construed to relate to Counts One, Two and Four of 415 and Counts One and Three of 737. Thus, even if this Court reverses the order of the Superior Court, Counts Three and Five of 415 and Count Two of 737 will remain unaffected. If we were to decide only the section 208 issue now raised, briefed and argued before us without addressing any of the other defenses raised by the defendant our action would conflict with our policy against piecemeal litigation.

If, on the other hand, we were to now address all the issues raised by Ford in its motion to dismiss, we would be forced to decide the issues it has raised without the benefit of the Superior Court's consideration and decision, and the arguments raised in this Court. As we lack the focus and depth provided by these procedures which constitute the touchstone of appellate review, we accordingly decline to address the issues not presently raised before us.[8]

Although the considerations outlined above preclude us from reaching the merits of the alternative grounds defendant Ford has raised in its motion to dismiss, we agree with the determination of the Superior Court that the issue of the applicability of 5 M.R.S.A. § 208(2) to the case at bar is of significant import and doubt. In addition, we recognize that the case at bar is of substantial importance to the citizens of our state and that resolution of the issue now raised before us may have a significant effect upon future litigation brought pursuant to the UTPA. Accordingly, we find that for the purposes of *this* case the resolution of the effect of section 208(2) outweighs our policy against piecemeal litigation.

### III. *The Significance of the 1973 Amendment to the Uniform Commercial Code*

The Attorney General initially contends that defendant Ford's liability in this case should be determined solely by 11 M.R.S.A. § 2–316(5)(a) without regard to 5 M.R.S.A. § 208(2). Underlying the contention is the supposition of the State that the provisions of 11 M.R.S.A. § 2–316(5)(a) effectively "override" or "supersede" those of 5 M.R.S.A. § 208(2). The Attorney General apparently seeks to have the enactment of 11 M.R.S.A. § 2–316(5)(a) repeal by implication the interstate commerce exemption to the Maine UTPA.

■ This Court has never been eager, nor are we now, to find that one legislative enactment has impliedly repealed another. "Statute provisions, unless absolutely conflicting, are to be construed as to make them operate harmoniously as a whole, giving each its appropriate effect—not using one section to evade or abrogate another." *Collins v. Chase*, 71 Me. 434, 436 (1880). To determine if one statute has repealed another it is necessary to consider whether "the two statutes are so repugnant that they cannot stand together, evidencing a legislative intent that one should repeal the other, or are covering completely the same subject matter." *Blaney v. Rittall*, Me., 312 A.2d 522, 527 (1973). We see no compelling reasons to support the claim that 11 M.R.S.A. § 2–316(5)(a) has worked a wholesale repeal of the interstate commerce exemption contained in 5 M.R.S.A. § 208(2).

The Attorney General, however, takes the argument that 11 M.R.S.A. § 2–316(5)(a) has superseded 5 M.R.S.A. § 208(2) one step further. According to the Attorney General, 5 M.R.S.A. § 208(2) does not become entirely repugnant to 11 M.R.S.A. § 2–316(5)(a) until the State brings an action under the authority of section 209 of the UTPA which is predicated upon violations

---

8. We decline, therefore, to express any opinion hereafter as to any allegations made by the Attorney General which do not fall within the purview of the UTPA.

of the UTPA which relate to consumer transactions.[9] It is at that juncture, we are told, that section 208(2) is entirely inconsistent with and should be superseded by 11 M.R.S.A. § 2–316(5)(a). This antagonism, the Attorney General argues, derives from the "plain meaning" of section 2–316(5)(a).

In order to determine whether the two statutory provisions are in conflict, we find it appropriate to turn to 11 M.R.S.A. § 2–316(5)(a) to consider its "plain meaning." As we noted above, 11 M.R.S.A. § 2–316(5)(a) rather cryptically provides that "a violation" of sections 2–314, 2–315 or 2–316 arising from the sale of consumer goods shall constitute a violation of the UTPA.[10] Central to our discussion herein is what conduct, in fact, constitutes "a violation" of 2–314, 2–315 and 2–316.

We note at the outset that Maine is the only jurisdiction to adopt a Uniform Commercial Code provision which provides that "violations" of the Code constitute *per se* violations of the Unfair Trade Practices Act. 1A U.L.A., U.C.C., § 2–316 (1976 & Supp.1980).

The Statement of Fact accompanying the Legislative Document (L.D. 1042) which enacted both subsection (5) and paragraph (a) of subsection (5) states:

> Maine consumers are customarily required to waive or limit any and all warranty rights granted to them under the provisions of the Uniform Commercial Code. In the purchase of automobiles, mobile homes, appliances and a great many necessities, the Maine consumer is forced to release his warranty rights un-

der the U.C.C. and accept in their place warranties which are oftentimes meaningless and unconscionable.

> While the waiver or limitation of such warranty rights is certainly a valid and reasonable commercial concept in a contract bargaining session between two business enterprises, it has been grossly abused by the business community in its dealings with Maine consumers who are forced to accept contract terms which are dictated solely by the seller.

> This amendment will insure that our consumers will no longer be forced to waive the warranty rights and remedies granted to them under the U.C.C.

> Similar legislation to obtain equitable treatment for other New England consumers has been enacted in Vermont and Massachusetts.

> Commercial transactions between business enterprises will not be affected by this amendment.

L.D. 1042, P.L.1973, ch. 444.[11] The legislation similar to ours, enacted in Vermont and Massachusetts, are 9A V.S.A. § 2–316(5)(a) and M.G.L., ch. 106, § 2–316(A).[12] The Vermont and Massachusetts enactments described in the Statement of Fact as legislation "similar" to our own relate *only* to attempts to exclude or modify the statutory warranties provided by the U.C.C. Neither Vermont nor Massachusetts has enacted legislation similar to paragraph (a) of subsection (5) to provide that a violation of Uniform Commercial Code sections 2–314, 2–315 or 2–316 shall constitute *per se* violations of the Unfair Trade Practices Acts of

---

**9.** A consumer transaction occurs when goods or services are bought or sold "primarily for personal, family or household purposes." 11 M.R.S.A. § 2–316(5). *See* 5 M.R.S.A. § 213.

**10.** *See* note 6, *supra*.

**11.** 11 M.R.S.A. § 2–316(5), enacted by P.L.1973, ch. 444, provides:

> The provisions of subsections (2), (3) and (4) shall not apply to sales of consumer goods or services. Any language, oral or written, used by a seller or manufacturer of consumer goods and services, which attempts to exclude or modify any implied warranties or [sic] merchantability and fitness

for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, shall be unenforceable. Consumer goods and services are those new or used goods and services, including mobile homes, which are used or bought, primarily for personal, family or household purposes. (Footnote omitted.)

**12.** We note that Maryland has also enacted a provision limiting exclusion or modification of statutory warranties. Md. Commercial Code Ann., § 2–316.1. *See Md. Independent Automobile Dealers Ass'n v. Administrator*, 41 Md. App. 7, 394 A.2d 820 (1978).

those states. It thus appears that the Statement of Fact accompanying L.D. 1040 speaks only to the enactment of subsection (5) and lends little, if any, guidance to an understanding of paragraph (a) of subsection (5). It remains for this Court, therefore, to determine what conduct is intended by 11 M.R.S.A. § 2–316(5)(a) to constitute a *per se* violation of the Maine UTPA.

We appreciate that the operation of 11 M.R.S.A. § 2–316(5)(a) is subject to diverse interpretation. Possible interpretations of conduct which will trigger the operation of 11 M.R.S.A. § 2–316(5)(a) include (1) a sale of consumer goods which do not meet the warranty requirements of the U.C.C., (2) a seller's or manufacturer's failure to honor the statutory warranties or to remedy a breach thereof, (3) an attempt at the time of sale to a consumer to obtain a waiver or limitations of the statutory warranties, or (4) some combination of the above.[13]

■ The fact that the legislature enacted paragraph (a) and subsection (5) concurrently, and perhaps more importantly, enacted paragraph (a) as a component of subsection (5) requires that we determine the construction of the paragraph in light of the subsection to which it is appended. Subsection (5) speaks only to the attempt of a seller or manufacturer of consumer goods "to exclude or modify any implied warranties or [sic] merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties...." 11 M.R.S.A. § 2–316(5). Our interpretation of paragraph (a) is limited by the parameters of subsection (5) as just defined. We do not think that the legislature intended paragraph (a) to establish a violation of the Maine Unfair Trade Practices Act whenever consumer goods are sold which do not meet the requirements of the statutory warranties. Although such a sale might well be evidence of unlawful conduct under the provisions of the UTPA, we doubt that the legislature intended to have paragraph (a) impose such a substantial burden upon sellers of goods which fail to meet the requirements of the statutory warranties.

■ Nor do we think the legislature intended paragraph (a) of subsection (5) to operate so as to make a "failure to honor" the statutorily created warranties a *per se* illegal act in violation of our UTPA. We emphasize that given the proper circumstances a defendant's failure to honor the statutory warranties may well be evidence of a violation of the UTPA. 5 M.R.S.A. § 207(1) provides that "[i]t is the intent of the legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section (5)(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." 5 M.R.S.A. § 207(1). A review of cases from the federal courts and our sister states shows that the terms "unfair" and "deceptive," as used in both the Maine UTPA and the Federal Trade Commission Act are not susceptible of precise definition. *See, e. g., Pan American Airways v. United States*, 371 U.S. 296, 306–08, 83 S.Ct. 476, 482–84, 9 L.Ed.2d 325 (1963); *Shell Oil Co. v. F.T.C.*, 360 F.2d 470, 479 (5th Cir. 1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); *Purity Supreme, Inc. v. Attorney General*, ——— Mass. ———, ———, ———, 407 N.E.2d 297, 307–08 (1980). Prudence requires us to refrain from attempting to articulate specific definitions of what conduct constitutes unfair or deceptive activity in violation of 5 M.R.S.A. § 207. "It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field." H.R.Conf.Rep.No.1142, 63 Cong., 2d Sess. (1914). General definitions promulgated by the F.T.C. refer to unlawful acts, acts which offend public policy, acts within the penumbra of some common law, statutory or other established concepts of unfairness, acts which are immoral, un-

---

**13.** We emphasize that we are not here concerned with the more general concepts of what conduct constitutes unfair or deceptive acts declared unlawful by 5 M.R.S.A. § 207. Our discussion herein relates *only* to what conduct 11 M.R.S.A. § 2–316(5)(a) makes a *per se* violation of the UTPA.

ethical, oppressive or unscrupulous, and acts which may cause substantial injury to consumers. *See* 29 Fed.Reg. 8355 (1964). The Massachusetts Supreme Judicial Court has also held an act deceptive if it "could reasonably be found to have caused a person to act differently from the way he would otherwise have acted." *Lowell Gas Co. v. Attorney General*, 377 Mass. 37, 51, 385 N.E.2d 240, 249 (1979). We reiterate our opinion, expressed recently in *Edwards v. Black*, Me., 429 A.2d 1015, 1016 (1981), that the limits of the UTPA are best defined on a case by case basis. We are not unmindful, however, that by its very title the UTPA suggests the complained of conduct should have some attribute of unfairness or deception to invoke its mechanisms.[14] For these reasons we are reluctant, without clear and specific direction from the legislature, to broadly interpret the definition of conduct which constitutes *per se* violations of the UTPA.[15] *See Banville v. Huckins*, Me., 407 A.2d 294, 298 (1979).

■ By declining to so expand the concept of *per se* illegal activity we strike what we consider an appropriate balance between the legislative intent embodied in section 2–316(5)(a) and the right of commercial enterprises in this state to contest whether a breach of warranty has, in fact, occurred.

*See Edwards v. Black*, Me., 429 A.2d 1015, 1016–17 (1981). We hold, therefore, that in the absence of an attempt to obtain a waiver or limitation at the time of a sale to a consumer there exists no *per se* violation of the Maine UTPA under 11 M.R.S.A. § 2–316(5)(a).[16]

## IV. The Application of 5 M.R.S.A. § 208(2)

■ We next turn to section 208(2) to consider whether Ford may properly avail itself of the interstate commerce exemption of the UTPA. Given the above interpretation of 11 M.R.S.A. § 2–316(5)(a), we find little support for the Attorney General's contention that paragraph (a) of subsection (5) should here "override" or "supersede" the provisions of the interstate commerce exemption. As we noted above, we will only invalidate a statutory provision when it is clear that the statute sought to be invalidated is in direct and irreconcilable conflict with another. We discern no such conflict here.

We recognize that the legislature in 1973 enacted amendments to both the UTPA and the Maine Uniform Commercial Code with a view toward enhancing consumer rights and remedies.[17] We must also, however,

---

14. The Appeals Court of Massachusetts has commented that to be unfair or deceptive "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." *Levings v. Forbes & Wallace*, 379 Mass.App. 914, ——, 396 N.E.2d 149, 153 (1979).

15. We are not unmindful that a finding that a defendant has violated the UTPA may have far-reaching consequences. For example, 29 M.R.S.A. § 350–A(1)(G) provides that "[a] motor vehicle dealer's license may be denied, suspended or revoked on any one or more of the following grounds ... [a]ny violation of Title 5, sections 206–212, Unfair Trade Practices Act ...." 29 M.R.S.A. § 350–A(1)(G).

16. No attempt to obtain such a waiver or limitation is here alleged. *See* part I, *supra*.

17. In addition to the enactment of subsection (5) and paragraph (a) of subsection (5) of Title 11, § 2–316, the legislature significantly amended the UTPA in 1973. Perhaps the most impor-

tant change was the addition of 5 M.R.S.A. § 213, enacted by P.L.1973, ch. 251, which authorizes private individuals injured by any unfair or deceptive act or practice declared unlawful by 5 M.R.S.A. § 207, to bring an action in Superior Court seeking restitution and attorneys fees. The legislature also added to section 207 of the UTPA to provide that evidence of a violation of a rule or regulation promulgated by the Attorney General under the authority of that section shall constitute prima facie evidence that the act or practice is unlawful. P.L.1973, ch. 322. The legislature deleted from section 209 of the Act the requirement that notice and an opportunity to be heard be provided before the Superior Court could issue an injunction to restrain and prevent violations of the UTPA. P.L.1973, ch. 419. The legislature also amended section 210 in 1973 to provide that evidence of a violation of an assurance of discontinuance of any act in violation of the UTPA shall constitute prima facie evidence of a violation of the UTPA in any action brought under the chapter. P.L.1973, ch. 320.

take cognizance of the fact that the legislature, although it repealed former section 208(3) of the UTPA, did not concurrently delete section 208(2). In fact, the legislature amended section 208(2) at the same time it repealed former section 208(3) to add what is now the final clause of the last sentence of section 208(2) which places the burden of proving the exemption upon the party claiming it. P.L.1973, ch. 323, § 1.

■ Notwithstanding the enactment of 11 M.R.S.A. § 2–316(5)(a), we do not think that the actions taken by the legislature in 1973 should be construed to deprive a defendant of the ability to invoke the provisions of the interstate commerce exemption when it can show that it meets the requirements of the exemption. The legislature included the interstate commerce exemption of the UTPA not only to avoid a problem of preemption between state and federal law, but also to protect interstate manufacturers from defending against a multiplicity of lawsuits throughout the fifty state jurisdictions.[18] No acts taken by the legislature since the enactment of the UTPA indicate that the legislature has since intended to achieve a result contrary to that which it initially intended in 1969. We are unpersuaded that the legislature intended the enactment of 11 M.R.S.A. § 2–316(5)(a) to remove lawsuits predicated upon alleged consumer violations from the purview of the interstate commerce exemption.

The Superior Court ruled below that the interstate commerce exemption does not apply to actions asserting private rights. The court framed the issue before it as whether the exceptions of section 208, which appear to have been enacted to preserve and protect the federal enforcement interest of the FTC, should be applied to defeat the private remedial provisions of the Maine UTPA. The court reasoned that if section 208(2) applied in private actions a consumer who sought recovery from an interstate defendant would be limited to the remedy provisions of Article Two of the Uniform Commercial Code, while a consumer who sought recovery from an intrastate defendant

---

18. Although there exists no legislative history relating to the enactment of the UTPA, much less the interstate commerce exemption which is part of it, we note that the Maine UTPA, similar to our Massachusetts counterpart, M.G.L., ch. 93A, was enacted partially in response to a Federal Trade Commission policy to stop unfair practices at the state level before they achieve national stature. *See Purity Supreme, Inc. v. Attorney General,* —— Mass. ——, ——, 407 N.E.2d 297, 301 (1980); H. Alperin & R. Chase, *Consumer Rights and Remedies* § 111, at 253 & n. 1 (1979). The initial FTC proposal that urged the states to enact laws to prevent consumer deception and unfair competition practices states that "generally speaking, the Commission's jurisdiction is limited to practices which are used across state lines, in interstate commerce. By enlisting the aid of Attorneys General and other State officials to control such practices within each State . . . the Commission can be freed to deal more quickly and effectively with problems of regional or national significance." Federal Trade Commission, News Release, July 7, 1966, 1. A 1969 Federal Trade Commission News Release commented: "[t]o the extent that the states correct such practices occurring locally, the Commission will be enabled to give quicker and more effective attention to problems of national significance." Federal Trade Commission, News Release, August 13, 1969. The 1967 volume of *Suggested State Legislation* promulgat-

ed by The Council of State Governments which followed as a result of the FTC initiative states:

The purpose of the suggested legislation is to aid local initiative in meeting rising demands from the public for more adequate protection against unfair and deceptive practices. By stopping such practices in their incipiency at the state or local level, before they grow into problems of interstate or national significance, the need for federal action will be minimized and judgments about what constitutes unfair or deceptive practice will so far as possible be decentralized to the people who are most directly affected.

Council of State Governments, XXVI *Suggested State Legislation,* A–71 (1967).

The record before us discloses that the Federal Trade Commission did, in fact, take action against Ford regarding its extended policy plans of which the Attorney General now complains. *In the Matter of Ford Motor Company,* F.T.C.Doc.No. 9015. As a result of this action the Federal Trade Commission and Ford have entered into an "Agreement Containing Consent Order" whereby Ford has agreed to notify all owners of potentially defective Ford vehicles of the possibility of free repair and/or reimbursement and agreed to make "defect information" available to all owners who might request it.

would have the advantage of restitution and attorney's fees under the provisions of the UTPA. The court also noted that the private remedy provisions of the UTPA were enacted after the original Act. The Court found that the purpose of the original exemptions embodied in section 208(2) was to preserve the federal "analogue" of protection and prevention. *See Bartner v. Carter*, Me., 405 A.2d 194, 200–03 (1979). A private state remedy for unfair and deceptive acts, with the possibility of restitutional recovery, has no federal "analogue." The Superior Court thus determined that the subsequent enactment of the private remedy provision should control over the exemption of section 208(2), not only for chronological reasons, but also as private causes of action do not interfere with or jeopardize the preventive role of the FTC.

Although the Superior Court correctly perceived that an action asserting private rights has no federal analogue, we do not find ourselves called upon to decide the issues it raised as we find the Superior Court predicated its decision on the erroneous assumption that an action brought by the State is an action asserting private rights. We perceive a specific distinction between an action brought under section 209 of the UTPA and an action brought pursuant to section 213. Although section 209 authorizes the Superior Court in its discretion to restore monies or property to persons who have suffered loss as a result of an unfair act or practice, the discretionary restitution award allowed by that section is explicitly ancillary to the commencement of section 209 enforcement litigation. We are not here confronted with an action brought pursuant to the private remedies provisions of section 213 of the UTPA. The Attorney General cannot, merely by demanding relief for individuals, transform a "public" action brought pursuant to section 209 into a "private" action brought under the authority of section 213. The restitutionary remedies allowed by section 209 are not mandatory but rest within the sound discretion of the Superior Court. The restitutionary remedies provided for by section 213 are mandatory. We think a clear dis-

tinction must be drawn between an action brought by the Attorney General under the authority of section 209 and one brought by a private individual pursuant to section 213. We do not purport to comment upon whether private actions brought pursuant to section 213 should be subject to the interstate commerce exemption of section 208(2). We hold only that the Superior Court erred when it determined that this action is one asserting private rights and as such is not subject to the exemption. We find this action to be an action brought pursuant to the authority of section 209 and therefore subject to the provisions of the interstate commerce exemption of section 208(2).

We must finally consider whether the acts the Attorney General complains of are subject to the intrastate exception to the section 208(2) exemption, *viz.*, whether the complained of acts occurred primarily and substantially within the State of Maine. Section 208(2) places the burden upon Ford, which seeks the exemption, to show that the complained of acts and practices did not occur primarily and substantially within the state. The Superior Court found that Ford had met its burden and that the acts and practices the Attorney General alleges constitute violations of the UTPA did not occur primarily and substantially within Maine.

Whether the acts complained of occurred primarily and substantially within Maine is a question of fact. Our appellate function limits our role to determining whether the finding of the Superior Court is clearly erroneous. *Harmon v. Emerson*, Me., 425 A.2d 978, 981 (1981). The record before us provides rational support for the conclusion reached by the Superior Court. Here, the defendant engaged in a national marketing and sales program. The defects alleged are not unique to automobiles sold in this state. The defendant implemented the extended policy program which the Attorney General claims constitutes a failure to honor the statutory warranty on a national basis, not only in Maine.

The Attorney General argues that the statutory warranties are created by state

law and the breach of those warranties, whether the breach consists of the retail sale of goods which do not meet the requirements of the warranties, an attempt to have a consumer waive or limit his statutory warranties, or a subsequent failure to honor the statutory warranties, constitutes a violation of the UTPA which occurs primarily and substantially within the state. Were we to agree with the Attorney General's contention, we think the "primarily and substantially" intrastate exception would swallow the interstate commerce exemption and render it meaningless. Indeed, as the Assistant Attorney General admitted at oral argument before us, if the defendant in the case at bar may not avail itself of the exemption provided by section 208(2), it is unlikely, if not impossible, that any national manufacturer could ever find shelter under the provisions of that section when the State relies upon consumer sales as a predicate for an action brought under the authority of section 209 of the UTPA. We do not think the legislature intended such a result.

We are not persuaded that the enactment of 11 M.R.S.A. § 2–316(5)(a), or any other legislative activity which has occurred since the initial enactment of the UTPA indicates a legislative intent to deprive a national manufacturer of the ability to invoke the provisions of section 208(2). Nor can we say the Superior Court erred when it held that the acts or omissions complained of did not occur primarily and substantially within this state. Accordingly, we reverse the decision of the Superior Court insofar as it relates to the applicability of section 208(2) of Title 5 and remand the case to that Court for dismissal of Counts One, Two and Four of CV 79–415 and Counts One and Three of CV 79–737 insofar as those counts allege a cause of action under the Unfair Trade Practices Act.

The entry is:

Judgment of the Superior Court reversed in part.

Remanded to the Superior Court for dismissal of Counts One, Two and Four of CV 79–415 and Counts One and Three of CV 79–737 insofar as those counts allege a cause of action pursuant to 5 M.R.S.A. § 209.

All concurring.