Sandra Lee EICH

v.

Ronald E. GELLERSON et al.

Supreme Judicial Court of Maine.

Argued Jan. 8, 1981.

Decided Feb. 17, 1982.

Fenton, Griffin, Chapman, Smith & Fenton, Nathaniel R. Fenton (orally), Bar Harbor, for plaintiff.

Gross, Minsky, Mogul & Singal, George Z. Singal (orally), Carl F. Rella, Bangor, for Gellerson.

James S. Horton, Stearns, Finnegan & Needham, John A. Woodcock, Jr., Bangor, for Savings & Loan.

Before WERNICK *, GODFREY, NICHOLS, GLASSMAN **, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

Sandra Lee Eich appeals from an order of summary judgment entered in Superior Court, Penobscot County, in favor of her father, Ronald E. Gellerson. The judgment disposes of one count of a multi-count complaint in which Eich sought to recover from her father and two brothers her share of certain real estate which was the subject of

---

* WERNICK, J., sat at oral argument and participated in the initial conference but retired prior to the adoption of this opinion.

** GLASSMAN, J., sat at oral argument and participated in the initial conference but died before the adoption of this opinion.

disposition as marital property in the judgment of divorce between her father and her mother. The Superior Court apparently based its summary judgment upon non-compliance with a sixty-day recording requirement formerly contained in 19 M.R.S.A. § 725. We vacate the judgment.

## I. FACTS

Sandra Eich is the daughter of Frances F. Gellerson, now deceased, and Ronald E. Gellerson, and the sister of two other defendants, Ronald W. and Richard D. Gellerson. On June 10, 1973, Frances and Ronald E. were divorced. The divorce judgment as it relates to the property now in issue, a residence on Stillwater Avenue in Bangor, provides as follows:

> Subject to all existing mortgages, said real estate is hereby conveyed to the said Defendant and Counterclaim Plaintiff, Frances F. Gellerson, for her life or until she abandons said property, with remainder to their children, Ronald W. Gellerson, Richard D. Gellerson, and Sandra Lee Cormier, [now Eich] as tenants in common, to the end that title to said real estate is vested in fee simple in said children, Ronald W. Gellerson, Richard D. Gellerson, and Sandra Lee Cormier, with a life interest in the said Defendant and Counterclaim Plaintiff, Frances F. Gellerson, or until she abandons said property. The said Defendant and Counterclaim Plaintiff, Frances F. Gellerson, is to assume and pay the mortgage presently existing on said premises.

The court also gave Frances title to all of the personal property in the house. The judgment concluded by stating:

> The Court orders that both the Defendant and Counterclaim Plaintiff, Frances F. Gellerson, and the Plaintiff and Counterclaim Defendant, Ronald E. Gellerson, sign all documents and instruments of whatever kind or nature in order to facilitate compliance with this Decree.

The divorce decree was not recorded until November 6, 1978. In the interim Ronald E. Gellerson retained record title.

Following the divorce, Frances lived in the Stillwater Avenue house until her death in September, 1975. The house then remained vacant until 1978. During this period, Ronald E. Gellerson continued to pay the taxes and utilities. In a deposition he stated that he considered the property to be his. In June, 1978, Ronald E. Gellerson sold the property to his son, Ronald W., for $14,000.

The parties differ on the planned disposition of the proceeds from the sale. According to Ronald E. Gellerson, after his wife's death he told his children that if he sold the property he would give each of them "a portion of the profits in it if there was any." He testified that he gave Ronald W. a credit of $5,000 on the sale price as a gift and later gave Richard a gift of $5,000, although he filed no gift tax returns. He did not give his daughter Sandra anything because of a falling-out between them.

In her affidavit, Sandra focused on promises made by her brother Ronald W. She stated that Ronald W., as administrator of their mother's estate, assured her of her equal share of the property but, because of quarrels with both Ronald and her father, they refused to give Sandra anything.

## II. PROCEDURE

Sandra Eich originally filed a complaint against her two brothers seeking a partition of the real estate. 14 M.R.S.A. §§ 6501–6525. After a preliminary pretrial conference, she filed an amended complaint with three counts on October 18, 1979. Ronald E. Gellerson, her father, is named as a defendant only in count two, the only part of the complaint presently before us. After hearing on Ronald E. Gellerson's motion, the court directed the entry of summary judgment as a final judgment as to count two reciting that "there is no just reason for delay in the entry of final judgment."

First, we note our disapproval of the certification under M.R.Civ.P. 54(b) without any articulation of the reasons therefor. *See Cole v. Peterson Realty, Inc.*, Me., 432 A.2d 752 (1981). *See also Canal National Bank v. Becker*, Me., 431 A.2d 71, 72 n.2

(1981). As will be seen from our discussion of the merits, the procedure followed in this case results in piecemeal review without an adequate factual record even to dispose finally of all of the issues relating to count two. Since the certification *here* was accomplished prior to our opinion in *Canal National Bank*, however, we will consider such issues as are before us.

■ Second, we note also our disapproval that the motion for summary judgment merely parrots the language of M.R.Civ.P. 56. Neither the motion nor the Superior Court order provides a single clue as to the legal basis upon which the judgment rests. We strongly suggest that counsel moving for summary judgment take care to articulate the legal issue or issues upon which they rely and which they consider to be dispositive. In order to ferret out the basis of the Superior Court ruling we have reviewed briefs filed in support of the motion as well as the transcript of hearing on the motion. By that somewhat painstaking process we have determined that the sole basis for the judgment was the admitted failure to record the divorce judgment within sixty days as then required by 19 M.R.S.A. § 725. Although other issues are argued on appeal, we do not reach them on the present record.

### III. VALIDITY OF DIVORCE JUDGMENT

The record does not contain a copy of the District Court docket without which the effectiveness of the divorce judgment and the effective date thereof remains in doubt. We do not know when, if ever, the District Court disposed of the complaint after having granted a divorce on the counterclaim. *See Parent v. Parent*, Me., 425 A.2d 975, 976–77 (1981). Even though the problem of finality *may* have been resolved by legislative action in 1981, P.L.1981, ch. 529, § 2, the impact of that legislation and its effect upon the recording requirement have been neither briefed nor argued. We express no opinion thereon, but assume without deciding that the divorce judgment became final in 1973.

■ Neither party has addressed what we consider the serious question of the propriety of the District Court's disposition of marital property. 19 M.R.S.A. § 722–A(1) provides that the divorce court "shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors, including:

A. The contribution of each spouse to the acquisition of the marital property . . .

B. The value of the property set apart to each spouse; and

C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children."

We do not find any express grant of power to the divorce court to distribute marital property to any person other than a spouse. The reference in sub-section C to a custodial parent cannot be interpreted, and was not intended, to confer on a divorce court power to control the devolution of marital property to the children of the parties. Courts of other jurisdictions have held similar provisions in a divorce judgment to be void on the grounds that the divorce court exceeded its powers. *See e.g., Patterson v. Patterson*, 242 Cal.App.2d 333, 349–50, 51 Cal. Rptr. 339, 351 (1966); *Giambrocco v. Giambrocco*, 161 Colo. 510, 512–15, 423 P.2d 328, 330–31 (1967); *Yedinak v. Yedinak*, 383 Mich. 409, 414–15, 175 N.W.2d 706, 708 (1970); *Williams v. Williams*, 428 P.2d 218, 221–22 (Okla.1967).

Once again sound judicial policy precludes us from deciding an issue not raised by the parties and not addressed by the trial court. *See State ex rel. Tierney v. Ford Motor Co.*, Me., 436 A.2d 866, 870–71 (1981). We have previously noted that developing principles concerning the validity of judgments disavow reliance upon labels such as "void" versus "voidable" and "collateral attack"

versus "direct attack." *See Northeast Bank N.A. v. Crochere*, Me., 438 A.2d 266, 268 nn.6 & 7 (1981). We simply note here that the correct application of such principles may rest upon factual determinations not fully developed on the present record. For example, whether the action of the divorce court was a manifest abuse of authority may depend upon whether the distribution of marital property resulted from actual contest on that issue or was a result of agreement. Additionally, the present record does not establish the full extent of third-party reliance upon the original judgment nor the full extent of any potential estoppel principles which may be operative. *See generally Restatement (Second) of Judgments* (1980). Accordingly, we address the only issue decided by the Superior Court and fully argued on appeal.

19 M.R.S.A. § 725, entitled "Descent of real estate in divorce," has undergone several amendments. In 1973, at the time of divorce, the statute provided:

No rights acquired under sections 721 and 723 on or before December 31, 1971 and no rights under section 722–A by a party in the real estate of a party are effectual *against any person except a party*, his heirs and devisees and persons having actual notice of such divorce unless the decree of divorce, or an abstract thereof setting forth the names and residence of the parties, the date of the decree and the court where granted, is filed in the registry of deeds for the county or registry district where the real estate is situated.

. . . .

Such abstract shall be deemed recorded as of the time of its receipt in the registry where filed.

. . . .

No such rights acquired under section 722–A shall be effectual *against any party or any other person*, unless said abstract or decree of divorce shall have been recorded, in the manner provided, within 60 days from the date of said order of divorce. (Emphasis added.)

The parties, *inter alia*, address the apparent conflict between the first and last paragraphs in analyzing the purpose of the sixty-day recording period.

Sandra Eich suggests that the sixty-day time period in the last paragraph should be construed only as a grace period for backdating recording to the date of the instrument, rather than as an absolute limit on when the recording can be effective. This conclusion, she advocates, is necessary in light of both the earlier legislation, which did not require recording for parties with notice, *e.g.*, P.L.1955, ch. 428, and which included a grace period, *id.*; 14 M.R.S.A. § 1604, and the latest amendment, which made failure to record no bar against the other party, P.L.1979, ch. 663, § 128. In addition, she contends, this interpretation is consistent with the general principles of record notice. *See* 14 M.R.S.A. § 1604.

Ronald E. Gellerson responds that the first and last paragraphs have similar purposes, but for different time periods. The first applies to divorce decrees under section 722–A entered between January 1, 1972, when § 722–A became effective, and March 15, 1972, when the sixty-day filing period went into effect. The last paragraph therefore controlled at the time of the divorce. Consequently, the running of the sixty-day filing period made the property division in the decree ineffectual. We reject the contentions of both Eich and Gellerson.

*Dishon v. Oliver*, Me., 402 A.2d 1292 (1979) provided us with our only prior opportunity to examine the effect of the sixty-day limit. *Dishon*, however, dealt only with whether a recording on the sixty-first day after judgment was timely when day sixty fell on a Sunday. Both parties in that case assumed that the property division would be ineffective if recorded after the sixty-day limit. The parties addressed only the effect of a statutory change in the method of calculating time limitations. The square holding of *Dishon*, therefore, is limited to the determination that the recording was timely.

We find the legislative history, both before and after 1973, as troublesome as the wording of the statute. To treat the last paragraph of section 725 as providing a grace period ignores the fact that the paragraph has co-existed with several versions of an express grace period contained in the fourth paragraph. The history of a 1975 amendment (abolishing the sixty-day limit) suggests, in fact, a legislative purpose to compel recording. That legislation, however, shifted the requirement to the *clerk* of the court to record automatically. On the other hand, we are at loss to understand why the legislature would wish to undo the considered judicial distribution of marital property, thereby provoking subsequent litigation, in the absence of any intervening third-party interests and *solely* to insure recording by the parties to effectuate the protection of third-parties afforded by the first paragraph. We also note the potential significance of the 1980 legislative enactment, P.L.1979, ch. 663, § 128 (effective March 28, 1980), of a saving sentence added to paragraph one which validates the effectiveness of divorce judgments recorded without compliance with the former (1 year and 60 day) requirements of section 725.[1] Application of the most recent amendment to the case at bar, however, might well implicate the provisions of 1 M.R.S.A. § 302.[2]

We turn instead, to a literal reading of the last paragraph of section 725 which the defendant claims constitutes an absolute bar to enforcement of the rights the plaintiff here asserts. The sentence begins *"No such rights* acquired under section 722–A shall be effectual...." We have noted above the absence of any statutory grant of power to the divorce court to distribute marital property to any person other than a spouse. The District Court, however, clearly purported to act under the provisions of section 722–A. Assuming such an exercise of power may survive examination by the trial court on remand, we now consider whether the interest distributed to Sandra Eich by the divorce judgment came within the legislative reference to *"such rights"* in the last paragraph of section 725.

The only antecedent for the phrase "such rights" contained in section 725 are those rights described in the first sentence of the first paragraph. Chapter 399 of the Public Laws of 1971, section 5, amended that first sentence to begin "no rights acquired under sections 721 and 722 *by a party* in the real estate of a party are effectual...." (Emphasis added.) Chapter 622, § 61–C of the Public Laws of 1971 (Act to correct Errors & Inconsistencies) amended the language further to provide that "[n]o rights acquired under sections 721 and 723 on or before December 31, 1971 and no rights under section 722–A *by a party* in the real estate of a party are effectual ..." (emphasis added). Thus, it clearly appears that the rights referred to are rights acquired *by a party to the divorce.* Although Sandra Eich and her brothers may have been the subject of custody and other provisions of the divorce judgment, they could not be considered as parties to that judgment.[3]

We conclude that the last paragraph of section 725 as it existed in 1973 did not apply to the rights, if any, acquired by Sandra Eich by virtue of the divorce judgment. That provision, therefore, does not render Eich's rights ineffectual as against her father. We do not, of course, express

---

1. P.L.1979, ch. 663, § 128 amended 19 M.R.S.A. § 725 by adding "[t]he failure of a party to record the decree or an abstract within any time period formerly prescribed by this section shall not affect the rights of that party as against the other party, his heirs and devisees." P.L.1955, ch. 428 contained a one year recording period. P.L.1971, ch. 622 reduced the period to sixty days.

2. 1 M.R.S.A. § 302 provides in pertinent part that "[a]ctions and proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby."

3. We recognize that the recording of the divorce judgment occurred after Ronald E. Gellerson conveyed to Ronald W. Although the first paragraph of section 725 excepts "a party", it may render the judgment ineffectual against a non-party without actual notice. We intimate no opinion as to the effect of late recording upon the claims against other defendants not now before us.

any opinion as to whether those rights are effectual against other persons who may have acquired rights to the real estate prior to the 1978 recording of the divorce judgment or whether those rights are effectual at all. We hold only that the Superior Court erred when it concluded that the failure to record the divorce judgment rendered the rights of Sandra Eich ineffectual ·as against her father, Ronald E. Gellerson.

The entry is:

Summary Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.